Good morning, Your Honors, and may it please the Court, my name is Jeremy Barron, and I'm here on behalf of Ms. Sridej. If I could, I'd like to save five minutes for rebuttal, and I'll keep track of the time. Finally, unless the panel directs me otherwise, I intend to focus my argument today on the issue from the supplemental brief. When a petitioner raises a torture concern in an extradition case, the petitioner has a procedural due process right to ensure that the Secretary of State strictly complies with the rules and regulations under the Convention Against Torture before authorizing the extradition. Here, the government failed to demonstrate its compliance with those rules. We're therefore asking the Court to reverse and remand with instructions to grant the writ. Now, when this issue arises, it is exceedingly easy for the government to demonstrate its compliance. The government simply needs to submit a declaration, signed by the Secretary or a senior official properly, designated by the Secretary, that demonstrates the government's compliance. So, who does the senior official, in your view, have to be? In this case, the Deputy Secretary. So, does the regulation or the statute say that there needs to be a declaration or an affidavit signed by a Deputy Secretary or above? The regulation does not say that. Does our case in Trinidad specifically say that there needs to be an affidavit or a declaration or testimony by a Deputy Secretary or above? The phrase in Trinidad does not specifically say Deputy Secretary. It says the Secretary or a senior official properly designated by the Secretary. So, that's the language from Trinidad. What we're saying is... that the government files to meet its burden by my read. But it does say, if the district court receives such a declaration, it shall determine whether it has been signed by the Secretary or a senior official properly designated by the Secretary. So, my view, and I'm only one of three, is that a declaration is not required, but where one is offered, where the government chooses to meet its burden that way, our en banc court directed the court shall determine whether it's been signed by. In this case, I guess it would be Secretary Blinken or his designee. Correct, Deputy Secretary. Newland is the one who authorized the extradition, so presumably from her or the Secretary herself. Whoever the Secretary is at the moment, right? And we don't have that. But respectfully, Your Honor, I do disagree with that interpretation of Trinidad. Trinidad specifically remands to the district court, and I'm quoting, if my notes are accurate from the opinion, we remand to the district court so that the Secretary may augment the record by providing a declaration that she has complied. Wait a minute, that's what I'm saying. What about what I just said, do you disagree with? Well, Trinidad is remanding for the declaration, and then on remand, if the district court receives... Well, here's what I said, and I want you to listen, if I could, to make sure that I understand where you and I are disagreeing. My read of Trinidad is that it doesn't require a declaration. The government could meet its burden by filing a declaration, and this case, Trinidad v. Garcia, says that if such a declaration is received, the district court shall determine whether it's signed in the way we have just been discussing. What about that do you disagree with? The way to demonstrate compliance is a declaration under Trinidad. You think that's the only way? Yes, that's the way that Trinidad... Say that. It says, in absence of any evidence that the secretary has complied with the regulation, we lack sufficient basis in the record to review the district court's order granting the petitioner's release. We remand to the district court so that the secretary may augment the record by providing a declaration. Perhaps my interpretation is different than your honor's, but my understanding is that Trinidad is directing district courts in future cases. The way for the secretary of state or the deputy secretary to demonstrate compliance is through a declaration. Now, perhaps there are other ways. Perhaps the secretary wants to come into court... I guess what I'd agree with you is that a way, after Trinidad, a way to demonstrate compliance is a declaration properly executed. I don't know where it says that that's the only way. Perhaps there are other ways that the government could attempt to meet its burden, such as testimony in court, but here the government has attempted to meet its burden through a declaration as Trinidad envisions. If the government is attempting to meet its burden through a declaration, Trinidad instructs the district courts to determine whether there's a proper signatory. So I'm having trouble understanding why, given the language of Trinidad and the language of the regulation and the statute, why, if I'm pronouncing the name correctly, Mr. Heineman's declaration doesn't comply. He says there, I'm the official responsible for managing the department's responsibilities in the case. I can confirm that the decision to surrender has complied with the obligations, and he also writes that the acting deputy secretary Newland authorized the extradition. I don't understand why that doesn't comply, where you have somebody who is managing the case according to their declaration here, and they say the secretary Newland authorized it, and I can confirm that all the procedures were followed. Why isn't that enough here? Why do we want to sort of manage how the Department of State conducts its operations? So our position is it needs to be from the decision maker, and there's multiple points I would make to back that up. First of all, there's some common sense to it. The point of Trinidad is to make sure that the secretary or the deputy secretary is making a bona fide judgment that the risk of torture is low. Respectfully, to me, it's sort of the opposite of common sense. Common sense is Secretary Blinken and his designees manage their department, and that the Article III courts don't manage the Department of State, and common sense is when you have somebody like the affiant or the declarant come up with a declaration like this, we should respect it. But the basis for Mr. Heinemann's knowledge is unclear. Counsel, why would we start with common sense when we have an en banc decision? Yes, and the en banc decision says secretary or a senior official properly designated. There's no indication in Mr. Heinemann's declaration that he Well, I think what we were getting at, since I was on that court, what we were getting at is we wanted someone with personal knowledge to say that the procedures were complied with before we accepted their representation, that there was a low, that the person would not be tortured upon extradition to the country that the Department of State was trying to whether Tom Heinemann has personal knowledge that the procedures, the obligations have been complied with, and that was the problem in the debate in Trinidad was, you know, we have very little power to review a document that extraditing someone that's issued a by the Secretary of State, very little, scope is very limited, but the minimum is that we must be assured that the proper procedures were complied with. So it's a question of, is this person able to assure us of that? I don't know if there's enough here, and I guess that's a question for you. How do we know? I agree with that, Your Honor. Again, our position is it should be the decision-maker, but even if it could be another official. It could be another person with firsthand knowledge who's able to say, yes, we complied with these procedures. And this would be a very different case if Mr. Heinemann's declaration said, I was an integral part of the decision-making process. I sat in on meetings with the Deputy Secretary, et cetera, et cetera. If there was some content in the declaration that made clear the basis for his knowledge, we would still make the same argument, it should be the Deputy Secretary signing it, but that would certainly be a closer case. Here, the declaration is devoid of any indication for why Mr. Heinemann is able to make representations on the Deputy Secretary's behalf. And he also signs the declaration under penalty of perjury, but he says, this is true to my knowledge. So that sounds a little bit like when an attorney says to the best of my knowledge, and he also says as the official responsible for managing the Department's responsibilities in this case, I can confirm. So to me, it doesn't sound to me like he's speculating or that he has no role in the case. It strikes me that the official responsible for managing the responsibilities in this case would be a person with knowledge. You don't dispute that the declarant was the official responsible for managing the Department's responsibilities, do you? I have no basis to dispute that, but I don't know what exactly that means. And that's a problem with this declaration, is we're all looking at it and trying to draw inferences from very vague general statements in this declaration. It would be a different matter if the declaration had a specific description of why Mr. Heinemann is considered a senior official, where he sits in the organizational chart. Are you focusing on his status as a senior official, or whether the Secretary has designated him to answer this question for us? Both of those, as well as the basis for his knowledge to come in and make representations on the Deputy Secretary's behalf, assuming someone other than the Deputy Secretary could be a proper signatory in this case. Okay, so you've now listed three points, and if you could circle back to the basis of his knowledge point, because that's what Judge Bennett is asking you about. Your argument that this isn't sufficient to show the basis of his first-hand knowledge is, what? Well, all the declaration says is, I'm an attorney advisor in the Office of Legal Advisor. I was the official responsible for managing the department's responsibilities in this case. Why isn't that enough? Because it doesn't provide any specific description of what he did. Managing a case might involve substantive involvement. It might involve being a part of decision meetings with the Deputy Secretary. It might involve simply sending emails and making sure that the trains are running on time.  Do you want us to do in this case to remand so that the Secretary of State or an actual designee for this matter can say, I have first-hand knowledge and all the procedures were complied with? Is that what you're asking for? Because that's what we did in Trinidad. We're asking for the court to reverse and remand with instructions to grant the writ, because the government has stood behind this declaration. So you're saying that because of, if we were to agree with you that this declaration isn't enough, we should grant the writ and void the extradition? Correct. And in the alternative, the court should remand with instructions to have the government submit a proper declaration. But the point... Wait a minute. So before you leave that, submit a proper declaration, would you be asking us to do something different than what the Embankment Court did in Trinidad y Garcia? No, Your Honor. I'm not asking for an expansion in Trinidad. Okay. Thank you for the clarification. The reason we're asking for relief outright on appeal is the government has stood by this declaration. So this was litigated in the district court. We filed our Rule 60B motion. They opposed it and filed the declaration. We filed a reply and said, this declaration doesn't appear to comply with Trinidad. They had the option at that point to go back to the State Department and get a declaration that complied. They chose not to do that. When we appealed and filed our supplemental brief, we again pointed out the deficiencies in the declaration. The government had the opportunity to then say, well, wait a minute. If there are problems with the declaration, the relief isn't to grant the writ outright. The relief is to remand and give us a second bite at the apple. They chose not to make that argument. They are standing by the declaration that they have submitted, and the court should decide this case based on that declaration. And I see I've gone well into my intended rebuttal time, unless the court has any. Okay. So why don't you save the rest of your time for rebuttal? Thank you. Thank you. Thank you. Good morning. May it please the Court, Adam Flake for the respondent. I'll also, unless the panel instructs otherwise, focus on the supplemental briefing and the sufficiency of the declaration. As we pointed out in our supplemental briefing, what actually happened in Trinidad was a little bit unusual, because at the oral argument, the attorney for the government said, if instructed by the Court, I will provide a declaration from the Secretary of State. Who was Secretary Clinton at the time. It was Secretary Kerry. Kerry? Yes. Why did we use she? Good question. Well, this is new to the panel there, but it was Condoleezza Rice who had been involved in the case, and then she was replaced by Secretary Kerry, a man. But the Department of State did submit the declaration. It did, and the reason that we submitted the declaration in that case was because the lawyer arguing the case said, if the Court instructs, we will provide a declaration from the Secretary. But counsel, we're bound by this unbonded opinion. Are you suggesting this is not binding? I'm not suggesting that it's not binding, and that was certainly a way that we could show that we had complied with our obligations. But what I am suggesting is, that language that says, when we receive a declaration, if the District Court receives a declaration signed by the Secretary of State or his designee, the inquiry will be at its end. What I am suggesting is, that is not the only way that we can meet our obligation. We can meet our obligation, because the problem in Trinidad was, the record was devoid of any evidence that the Secretary or his designee had complied with his obligations to make this review. And so, in the context of that particular case, what we offered was, we can get you a declaration signed by John Kerry, and we did in that case. But what I'm suggesting is... But we didn't require that. It says, signed by the Secretary or a senior official properly designated by the Secretary. Right. And that's what we offered, was a declaration from John Kerry. And what the court said is, if we get a letter from the Secretary or his designee, the inquiry will be at its end. But our argument is, that the point of Trinidad was, that the record was devoid of any evidence that the Secretary or his designee had provided evidence. We volunteered a way to prove up that fact, and the court said we instruct you to do so, and we did so. But by so doing, when the court did so, it was not telling us the only way that you can meet your obligation in this case is to provide... I agree with you, and that's what I tried to say to opposing counsel. I don't think... I mean, I agree with part of what you're saying. Trinidad e Garcia, by my read, is a very short opinion, so there's not a lot of room to hide in it. It does not suggest to me that the only way the government can meet its burden is through a declaration. What you're going to have trouble explaining to me is why we shouldn't enforce it as it is written, which is, if the government chooses to go that route, right, it needs to... The declaration needs to indicate that it's signed by the Secretary or his designee. Somebody that the Secretary has said is basically delegated, has delegated this responsibility to. That's all. Your Honor, I think that the reason is because of the particular posture of Garcia where we had offered such a declaration. Well, I appreciate that argument, but this is what the unbugged opinion says. Right. So, in the... I didn't mean to interrupt, Your Honor. It's so easy to comply. It's a good question, and I'm not sure why it wasn't complied with here. I agree absolutely with Judge Wardlaw, and I don't think I'm going out on a limb to say that... I read the same into Judge Bennett's questions, that we have a very limited role here, very limited role, but it seems to me this is required. Your Honor, I... You've given me the best answer you can. I'm not trying to belabor the point. I don't mean to dig in or sound obtuse, but it was a sufficient weight... I'm not sure because in the opinion, the concurrence authored by Thomas, who has been Chief Judge Thomas... Let's see who joined that. I think I joined it, and Judge Brezan joined it. We expanded. We said, the appropriate manner of review and the one endorsed by the government at oral argument, meaning that the government endorsed this manner. I don't know if the government... You're suggesting the government volunteered an affidavit, but it wasn't meant to... The declaration, but it wasn't meant to be for all time, but the way Chief Judge Thomas wrote it, he said, it was the one endorsed by the government at oral argument is to require submission to the court of a certification or affidavit from the secretary or her authorized designee certifying compliance. That's not hard to do. I mean, that's the thing I find perplexing. It's like, if Tom Heineman is her certified... Is her authorized... He's Secretary of State right now, I'm going again. Is his authorized designee, why doesn't he say that? I'm the authorized designee. To be clear, we're not claiming that Tom Heineman is the authorized designee to make the decision whether or not to ultimately sign the extradition warrant. That is Deputy Secretary Newland. And the declaration is clear on that. Secretary Newland had the authority. Secretary Newland made the decision. And I, Tom Heineman, know about this case because I'm managing the department's responsibilities and this is what happened. The designation was made by somebody with authority, the acting Deputy Secretary. That's right, Your Honor. The way that we read Trinidad is the evidence that was lacking was any evidence that the Deputy Secretary or the designee had made the determination that he or she was required to make. And what we provided in this case, in the form of a declaration from Tom Heineman, who has personal knowledge, who works in the office... We know he has personal knowledge. He states that... I have his declaration right here. I make the following declarations based upon my personal knowledge and the information made available to me in the performance of my duties. Okay, so he has some personal knowledge and then some non-personal knowledge. He is an attorney advisor in the office. He's a legal counsel for the office that makes... What I'm saying, he says personal knowledge and upon information made available to me. So that's like, that's not necessarily his personal knowledge, that's someone else's personal knowledge that was made available to him. I mean, I'm not sure that I would read that much into... Why doesn't he just stop at personal knowledge? He's talking about... He's talking about... Well, I think his statement is he has personal knowledge of how the process works, but I don't think that he can say, I know about every email sent from this department to... And I'm not sure, at least for me, why that would be required in this instance. I mean, if one wanted to come up with a reductio ad absurdum thing, you could have an administrative assistant in the department attached to their affidavit, video of the assistant secretary signing the extradition warrant. And they certainly wouldn't be a senior official, but again, Mr. Heinemann, what does it mean to you that he's the official responsible for managing the responsibilities of the Department of State in this extradition case? What does that mean to the government? The State Department has a division that deals with extradition requests, and they evaluate these... They are the... And it's in the regs that we cited in our brief. The department as a whole makes the determined... Evaluates these things, and it is ultimately the secretary or his designee that makes the decision tonight. But the secretary and his designee aren't the ones that are talking to foreign countries and reading reports about various things. It's something that... It's how the department functions, and that's how I read that. And so the way that... So if I've got you right, the secretary or his designee made the decision, in this... Has to make the decision. In this case, the secretary's designee made the decision, and the declaration... We don't have a declaration from either of those people, but we have a declaration from Mr. Heinemann, and Mr. Heinemann's declaration suffices because... Mr. Heinemann's declaration suffices because he has knowledge how the department operates and the information that the secretary's designee considered in reaching her decision, and that was the evidence that was lacking. What was lacking in Trinidad was... Wait a minute. That's the evidence that was... And I think you're saying that that's sufficient here. Yes. Okay. Yes. So the evidence that was lacking in Trinidad was any evidence that the secretary or his designee had actually complied with the obligations under the CAT to engage in this analysis and make a decision. And what Mr. Heinemann was able to provide is, I have knowledge of how the process works. I have knowledge that the secretary's designee made this decision. How does your... How does the position that you're advancing today differ from the positions that were To be perfectly frank with you, Your Honor, I haven't gotten into any great detail of the dissents in Trinidad. Fair enough. There were, as Judge Wardlaw was on the panel, and I'm sure you remember, there were a lot of moving parts. There were arguments we made that were not accepted in that case, such as the real ID. That was a whole other piece of it, and we're certainly not asking the court to walk back Trinidad. Okay. As I take your major point vis-a-vis Trinidad, is, as my colleagues have said, and as you have said, what the court, the in-bank court said, the record before us provides no evidence. So it really was a blank slate according to the in-bank court, and your argument is we're not in the same posture here as the in-bank court was in Trinidad. Yes, Your Honor. And what happened in Trinidad was we offered something. The court said that would be good enough. But we do not read Trinidad as meaning this is the one and only route to... I appreciate that. Is there some reason you can't just comply with this? I agree with Judge Wardlaw. This seems pretty simple. What am I missing about this? To be very frank with you, Your Honor, I'm an assistant United States attorney in the District of Nevada. I am not familiar with the inner workings of the State Department, and I don't think there's anything in the record about that. Again, I don't mean to be obtuse, but I simply don't know. But you've been actually very helpful, and I appreciate your response. No, it has been helpful, but I just think that we, you know, you read the concurrence with... You can pick apart the language in the en banc, I mean, the per curiam, but that was a per curiam. And what Chief Judge Chalmers wrote was that the appropriate manner of review and the one endorsed by the government in oral argument is to require submission to the court of a certification or affidavit from the secretary or authorized designee. Why couldn't Tom say, Tom Hindman say, I am the authorized designee to submit the evidence that the Department of State complied with its obligations under the laws of the United States? Well, it's two different things. In the regs, it says that either the Secretary of State or the designee has to make the final determination as to whether or not to exudate. Why couldn't Mr. Newland just have signed that he made the determination and complied with the laws of the United States? It's such a minimal requirement. It's a woman, and I agree that, I mean, we got a declaration from John Kerry in Trinidad. I agree that we could have followed that route, but we didn't do so in this case. We feel like what we... We feel... I think we felt that we had to have something or else there was no judicial review at all. Right. And what I'm saying in this case is, what Trinidad lacked was anything to review, was any evidence that the Secretary or his designee had made the proper review and reached the determination. Slippery slope one step further, and I hear Judge Bennett, and he's saying, well, there was nothing there, so let's distinguish this, and then you're going to get a slippier slope another step further. And I don't know. I respectfully disagree, Your Honor. The thing that keeps it from being a slippery slope is the Secretary or his designee has to make the decision whether or not to authorize the extradition, and that's very clear. Mr. Hyman couldn't make that declaration because he's not the designee. In this case, it was Deputy Secretary Newland that was required to go through the analysis required by the regs, and all we're talking about is how we provide evidence that she did so, and the evidence that we provided in this case is someone with personal knowledge of how the process worked, Mr. Hyman, who works in the office where they put together this review for Deputy Secretary to provide. I understand that you're defending something that you weren't a part of, that's the different offices process. But I'm certainly not trying to distance myself from what we did and from what State did in this case. Right. I don't think you are. I'm just saying... The only thing I meant to distance myself from is saying, well, why couldn't Secretary Newland do this? And to be very frank with you, I don't know the answer to that because I am not familiar with the inner workings of the department. I mean, part of the answer, I suppose, could be that Secretary Newland, Secretary Blinken, other officials in the department have other things that take up their day-to-day affairs, like that we read about in the newspaper every day and that they should get to decide how they run the department and how they prove that somebody has signed something. But there's another perspective on this. With the state of the world today, Your Honor, I think that is, I think it is a safe assumption that they are very busy people. Oh, that's another slipperier slope because the state of the world could just keep getting worse. But to be clear, we're not trying to walk back from the Secretary or his designee's obligation to make the determination. And in this case, we have evidence that the Secretary's designee, Deputy Newland, made the determination. And we believe that under Trinidad, that's sufficient. All right. I think... Thank you. Thank you, Counselor. I think we all understand the argument and the lines we're drawing. Counselor, if we agree with you, why wouldn't we do exactly what we did in Garcia E., Trinidad and remand for the State Department to supply a compliant declaration? Because in Trinidad, the government was not on notice that that was going to be required. That's a requirement that the en banc court in Trinidad put into effect in the first instance. Here the government is... And so somehow... And so somehow... But there's a... The explanation that we just heard, it seems to me to be a good faith explanation. I think it misses the mark. But again, I'm just one out of three up here. You really think we'd grant the writ? Is there any precedent for that? I'm not aware of a case since Trinidad that's in the same posture as ours. Because we have an extraordinarily narrow role here. I agree with that. But it's important to give this narrow role meaning. Trinidad takes away a broad scope of substantive review in these cases, and it retains this limited scope of procedural review. It's important to give that review meaning, and it's important to hold the government to its litigation choices. The government has known about the Trinidad decision since 2012. They submitted the declaration, they submitted it in the district court, and they have continued to stand by that declaration up till today, and have not said, if you think there's a problem with the declaration, give us another bite at the apple. And given the government's litigation choices, the court should not give the government a second bite at the apple. And I'll turn back to a point that was made at the end of opposing counsel's argument about these individuals being busy. And certainly, we don't dispute that they're busy individuals. But they are taking time to make these extradition decisions. They have not delegated these extradition decisions to further lower-level individuals. And they have to sign a surrender warrant. My understanding is there's a physical surrender warrant that gets signed. And so if someone like Mr. Heineman is giving them a declaration pursuant to Trinidad to sign at the same time they are signing the surrender warrant, that's a de minimis additional imposition on the secretary or the deputy secretary's role. The warrant been signed in this case? I believe that's a question for the government, but I think there's been a representation that has. So it would not take very much time to believe the deputy secretary. Do we have this in our record? It is not in the record. Deputy Newland has signed it. Why couldn't he have signed it simultaneously with the declaration? How much time does that take? Are you addressing me? Yes, I am. I just... Sorry. I've never stood back up before after. Well, you're here. Your Honor, again, I do not know about the inner workings of the State Department and who signs what. The important point to me is that Trinidad requires evidence that the secretary or his designee complied with his or her obligations. We provided evidence that he did so in this case of somebody who had personal knowledge of how the process worked. All right. Thank you. And I believe I am over my rebuttal time unless the court has any further questions. No. Thank you. Thank you both. Thank you. Thank you very much. I'm going to... Schwerd versus Blinken is submitted.
judges: WARDLAW, CHRISTEN, BENNETT